BERTIG BROTHERS v. INDEPENDENT GIN COMPANY.

Opinion delivered April 12, 1920.

1. WAREHOUSEMEN—LIABILITY OF GINNER.—Where a public cotton ginner failed to take a "fair, correct and true sample" of bales of cotton, required by Acts 1917, p. 1401, § 43, it is liable to parties who purchased the bales and resold them to others who recovered the difference between the price paid and the market price, although the ginner's failure was not wilful or fraudulent within § 47, *Id.*, prescribing a penalty; nor was it essential that the certificate of guaranty be actually furnished by the ginner.

2. WAREHOUSEMEN—FAILURE TO TAKE TRUE SAMPLES—MEASURE OF DAMAGES.—Purchasers of cotton ginned by a public ginner which failed to take true samples, as required by Acts 1917, p. 1401, § 43, could recover from the company the difference between the contract price on resale and the true market value, though, if the damage had been discovered before resale, the recoverable damage would have been the price paid on the faith of the correctness of the sample and its market value when the damage was ascertained.

Appeal from Greene Circuit Court, First Division; *R. H. Dudley,* Judge; reversed.

*Huddleston, Fuhr & Futrell,* for appellants.

1. Appellee was a public ginner and liable on its bond. Acts 1917, vol. 2, p. 1401. It failed to take true samples of the cotton ginned. It was error to instruct a verdict for defendant, as a case for a jury was made. Disobedience of a statute constitutes actionable negligence. 22 N. E. 20; 9 L. R. A. (N. S.) 338 and note; 5 *Id.* 186 and note; 38 Cyc. 418. It was the duty of appellee to properly pack the cotton and take true samples. The cotton must correspond to the samples. 27 Am. Dec. 132 and note 158; 29 S. W. 431; 27 Am. Dec. 158. It was the duty of the ginner to take fair, true and correct samples of cotton ginned and the ginner warrants the cotton to be as sample shown. The act is a police regulation and valid. 115 Ark. 374; 15 Pick. (Mass.) 264. The ginner was liable. Wharton on Negl., § 438; Story on Bailments, § 167; Cooley on Torts, §§ 379-390; 1 La. Ann. 199; 33 Me. 433; 22 *Id.* 371; 6 Phila. 582; 33 Am. Rep. 401.

2. This is an action of tort and appellee is liable. 38 Cyc. 427. The false sample was the source of damage. The ginner violated a legal duty, which was the sole and proximate cause of the injury and the cause should have gone to a jury for the assessment of damages.

*Geo. A. Burr* and *Block & Kirsch,* for appellees.

Assuming that under the statute the facts constituted a violation of a legal right, yet there was nothing upon which the court could have predicated an instruction for damages to a jury, which would have made them otherwise than speculative, indefinite and uncertain. Giving to appellant's testimony its strongest probative force, yet the trial court acted correctly in directing a verdict, and there is no error, as the evidence shows no liability. 50 Ark. 326; 88 *Id.* 277; 93 *Id.* 42; 70 *Id.* 329. Appellee was not civilly liable under the act. No fraud was proved nor false representations made. 73 Ark. 543; 106 *Id.* 151; 71 N. W. 343; 36 L. R. A. 689. From any angle the court properly directed a verdict.

McCULLOCH, C. J. Appellee, Independent Gin Company, a domestic corporation, operates a cotton gin at or near the city of Paragould, and is a public ginner within the meaning of the act of March 21, 1917 (Acts 1917, volume 2, p. 1401), regulating the ginning and packing of cotton. Said appellee gave a bond in accordance with the requirements of the statute, with its co-appellee, United States Fidelity & Guaranty Company, as surety. Appellants, Bertig Brothers, a copartnership, are engaged in the mercantile business at Paragould, and are also engaged in buying and selling cotton in the open market. They purchased from farmers a certain number of bales of cotton ginned and baled at the gin operated by appellee, Independent Gin Company, and resold the cotton to certain cotton buyers in Memphis. After the resale of the cotton, it was discovered, according to the allegations of the complaint and the testimony in the case, that the cotton had been improperly sampled

by the ginner; that the bales were wet in the center—
"water-packed," according to the trade terms expressed
in the testimony—and that when opened up the cotton
was found to be in a damaged condition. Appellants had
to make good the difference between the price paid to
them by the Memphis purchasers and the market price
of the cotton in its damaged condition, and they insti-
tuted this action against appellee, the ginner, and the
surety on the bond, to recover compensation for the loss.

The action is based on the alleged wrong done by the
ginner in failing to take true samples. The testimony
was sufficient to justify a finding that by reason of a
leak in the piston of the tamper in the gin press, water
ran down into the center of the bales of cotton as they
were pressed, and that the samples were not taken in
a manner to disclose the fact that the cotton was wet,
and were, therefore, not true samples of the bales of
cotton as they were ready to be placed upon the market.
In other words, the testimony warrants a finding that
the gin company did not, as required by statute, take
"fair, true and correct samples of the cotton." The tes-
timony discloses the method of taking samples in the gin,
and it is shown that the samples were taken as the cot-
ton passed from the ginhead to the press and before the
lint got into the press. Samples taken in that way, of
course, did not disclose the true condition of the cotton
if water got into it after the time it passed from the gin-
head, nor did it show, when the samples were taken in
that way, "gin-falls" which were thrown from the gin
into the press after the samples were taken.

There is no evidence in the case, however, tending
to show that the samples were falsely taken with any
intent to defraud. Section 42 of this statute provides
that those who operate public gins in the State shall ob-
tain a license as a public ginner and shall give bond in
the specified sum to pay to interested parties any liability
incurred. Two other sections of the statute bearing on
the present controversy read as follows:

"Section 43.    Each licensed or bonded ginner under this act shall take from each bale of cotton ginned by him two fair, true and correct samples of cotton, weighing not more than five and one-third ounces each and place same in separate sealed packages.    One of said samples shall be delivered to the customer or owner of the cotton, and in case the cotton is deposited in a warehouse, one of said samples shall be left with the warehouse manager.    Each sample of cotton shall be accompanied by a certificate over the signature of the ginner or the gin owner certifying that said sample is a true, correct and fair sample; guaranteeing under his bond that no fraud was practiced in taking such sample and that same was fairly taken from said bale of cotton in such manner as to be true, correct and fair; that the cotton in said bale was not wet when ginned, and that during the process of ginning said bale of cotton, or thereafter, no water or foreign substance had been placed in said cotton with the intent to defraud.    Such certificate shall bear the name and address of the person for whom the cotton was ginned, the name of the owner of the land on which the cotton was raised and the corresponding number and gin weight shown on the bale of cotton and the books of the ginner."

"Section 47.    Any ginner or agent, servant or employee of the corporation conducting the business of ginning cotton under the terms and provisions of this act, who shall knowingly and wilfully fail to take two true and correct samples of each bale of cotton ginned by him, as provided in this act, and to preserve and label the same as provided for in this act, or who knowingly and wilfully takes and preserves untrue, unfair and incorrect samples of any bale of cotton ginned by him, or who knowingly and wilfully mislabels any samples of cotton taken by him under the terms and provisions of this act, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed one thousand ($1,000) dollars."

It will be observed that section 43 prescribes the duties of the public ginner with respect to furnishing samples and giving a guaranty in writing, but it does not, in express terms, impose liability for injury done by failure to comply with the statute. Section 47 prescribes a penalty for knowingly and wilfully failing to take true and correct samples.

It is contended that liability of the ginner for failing to furnish a true sample results from the doctrine that non-performance of an imposed statutory duty resulting in injury to another creates a right of action in favor of the person injured. *Sluder* v. *St. Louis Transit Co.*, 5 L. R. A. (N. S.) 186; *Wolf* v. *Smith*, 9 L. R. A. (N. S.) 338; *Greenwood Cotton Mill* v. *Tolbert*, Ann. Cas. 1917 C, p. 338; *Pearson* v. *Puckett*, 15 Pick. (Mass.) 264.

Learned counsel for appellees defend the ruling of the court in giving a peremptory instruction on the ground that the statute imposes liability only in case of wilful or intentional wrong, and that there was no evidence of such in the present record. It is also argued that there is no liability because a written certificate of guaranty was not furnished by the ginner as provided in section 43 of the statute.

It will be observed that section 43 merely prescribes a duty, but does not impose liability in express terms. It does, however, in unmistakable terms, impose the duty upon the ginner to furnish correct samples, and also to furnish accompanying certificates in evidence of the statutory guaranty of the correctness of the samples, and of the other matters recited in the statute. The certificate required by the statute does not constitute the guaranty of the truth of the samples, but is a mere evidence of it. The statute itself imposes upon the ginner the obligation of a guarantor as to the correctness of the samples and the other things recited in the statute. The certificate is not required to be attached to the samples, but it must accompany the same, that is to say, it is the duty of the ginner to furnish the certificate to his customer with each

sample, so that persons who deal with the samples may have the opportunity, if desired, to inspect the certificate which is broader than the mere evidence of the correctness of the sample itself.

Our conclusion is that, according to the authorities cited, liability results from nonperformance of the duty imposed by section 43, even though such nonperformance is not wilfully or fraudulently done within the meaning of section 47, nor is it essential to liability that the certificate of guaranty shall be actually furnished by the ginner. Those who buy according to the sample have a right, without demanding the certificate, to assume that the sample is a true one as required by statute, and if injury results by reason of the incorrectness of the sample, the ginner is liable, whether it results from intentional omission or from mere negligence.

The basis of appellant's suit is not the negligence in allowing the cotton to become wet, for it was not their cotton at the time it was ginned, and the ginner was not responsible to them for any negligence in the ginning and baling; but the liability to appellant, if it exists at all, rests upon the failure to perform the statutory duty of furnishing a correct sample. We are of the opinion that this affords basis for liability to any one who deals upon the faith that the sample is a correct representation of the condition of the cotton at the time it came from the gin press. The evidence in this case shows that there was negligence in allowing the cotton to become water-soaked and in taking a sample in a way which did not disclose the true condition of the cotton as it came from the press.

We are of the opinion, therefore, that the court erred in taking the case from the jury.

Something should be said with respect to the measure of damages. Appellants claim the difference between the contract price on the resale to the Memphis purchasers and the true market value, according to the cotton in its damaged condition at the time the damage was discovered. This is, we think, the correct measure of

damages. If appellant had discovered the damaged condition of the cotton before the resale, the measure of damages would have been the difference between the price paid for the cotton on the faith of the correctness of the sample and its market value at the time the damaged condition was ascertained, or should have been ascertained. Appellant had the right to rely upon the correctness of the samples and held the cotton until it was sold by the Memphis dealers. They then had to make good the damage by paying the difference between the price paid to them for the cotton and its market value in the damaged condition. Reimbursement for this amount is the just measure of their compensation.

The judgment, therefore, is reversed and the cause will be remanded for a new trial.